```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
DIONNE K. THOMPSON,                                 :
                                                    :
                              Plaintiff,            :    09 Civ. 7239 (PAE) (THK)
                                                    :
              -v-                                   :    OPINION & ORDER
                                                    :
MORRIS HEIGHTS HEALTH CENTER,                       :
                                                    :
                              Defendant.            :
                                                    :
------------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

Defendant Morris Heights Health Center ("MHHC") moves for summary judgment with respect to the Complaint of *pro se* plaintiff Dionne Thompson ("Thompson"), in which Thompson alleges that MHHC subjected her to post-employment retaliation for filing an administrative complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR"). For the following reasons, the motion is granted and judgment will be entered in MHHC's favor.

I.   **Procedural History and Undisputed Facts**[1]

On December 21, 2007, Thompson's employment with MHHC ended. 56.1 ¶ 1. On or about January 7, 2008, Thompson "dual-filed" a Verified Complaint with both the NYSDHR and EEOC (the "NYSDHR/EEOC complaint"), alleging that MHHC had discriminated against her

---

[1] The following account of the underlying facts and procedural history of this case is drawn from the Court's Docket Sheet, Thompson's Complaint (Dkt. 2), the Declaration of Dean L. Silverberg in Support of MHHC's Motion for Summary Judgment ("Silverberg Decl.") (Dkt. 46), MHHC's Local Rule 56.1 Statement of Material Facts Not in Dispute ("56.1") (Dkt. 44), the Declaration of Dean L. Silverberg in Reply to Plaintiff's Opposition and in Further Support of MHHC's Motion for Summary Judgment ("Silverberg Supp. Decl.") (Dkt. 55), and Thompson's omnibus submission in opposition to MHHC's motion for summary judgment, and the exhibits thereto (Dkt. 53).

[1]

on the basis of her creed/religion (Sabbatarian) and disability (spinal injury), in violation of the New York State Human Rights Law ("NYSHRL"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act, 29 U.S.C. § 621 *et seq. Id.* ¶¶ 3–4. On April 29, 2008, the NYSDHR dismissed Thompson's complaint, finding no probable cause to believe that MHHC had engaged in unlawful discrimination. Silverberg Decl. Ex. B. Thompson did not appeal that determination. *Id.* On June 24, 2008, the EEOC adopted the NYSDHR's findings, dismissed Thompson's charge, and issued Thompson a notice of right to sue letter, stating that Thompson had 90 days to sue MHHC. *Id.* at Ex. C. Thompson did not do so. *Id.* ¶ 7.

On or about August 18, 2008, Thompson filed another charge with the EEOC, claiming retaliation in violation of Title VII, but not under the NYSHRL. *Id.* at Ex. D. That complaint alleged that MHHC had retaliated against Thompson for filing the January 2008 NYSDHR/ EEOC complaint. *Id.* Such retaliation, Thompson alleged, consisted of MHHC's failure to (1) timely provide her with Consolidated Omnibus Budget Reconciliation Act ("COBRA") notifications and enrollment information; (2) timely provide her with Employee Share Benefit Plan ("Pension Plan") information; and (3) cooperate with her in the return of her belongings from MHHC's offices. *Id.* On April 27, 2009 the EEOC dismissed Thompson's complaint, concluding that Thompson had not alleged a violation of Title VII. *Id.* at Ex. E. The EEOC's notice advised Thompson that she had 90 days in which to sue MHHC based on the actions alleged. *Id.*

On July 22, 2009, Thompson filed this Complaint, which brings claims based on the conduct described in both the initial NYSDHR/EEOC complaint and the later complaint made to the EEOC only. *See* Dkt. 2. Thompson sued approximately 10 months after the 90-day window

[2]

period in which to sue had expired as to the NYSDHR/EEOC complaint, but within 90 days of the dismissal of the second EEOC complaint. On February 16, 2010, MHHC moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on various grounds, including that to the extent that the Complaint asserted claims made in Thompson's first administrative action, against NYSDHR and EEOC, it was time-barred. *See* Dkt. 8–9. By Order dated May 18, 2010, the Honorable Barbara S. Jones, to whom this case was then assigned, granted MHHC's motion to dismiss Thompson's claims based on that ground; however, she denied MHHC's motion to the extent it sought dismissal (on grounds of implausibility, under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) of Thompson's other, timely claims of retaliation. *See* Dkt. 12.

Thompson's Complaint, as narrowed by Judge Jones, thus today consists solely of challenges to the dismissal of her second complaint, filed with the EEOC only. Thompson asserts that, as a result of her filing of the earlier complaint with the NYSDHR and the EEOC, MHHC retaliated against her in various ways after her employment with MHHC ended. Specifically, she contends that MHHC (1) did not timely issue her information regarding benefits under COBRA; (2) failed to expeditiously provide her with a statement of benefits and a disbursement under the Pension Plan; and (3) did not cooperate in Thompson's efforts to retrieve her belongings from MHHC's offices. The undisputed facts as to these allegations are set out in turn.

    **A.**    **COBRA Benefits**

In late December 2007—before Thompson filed the NYSDHR/EEOC complaint—Thompson communicated with Cheryl Merritt ("Merritt"), MHHC's Vice President of Human Resources, regarding Thompson's COBRA health care benefits. 56.1 ¶ 2. On December 26, 2007, Thompson e-mailed Merritt, stating that she had attempted to call Merritt a number of

times but had received no answer.  Silverberg Decl. Ex. M.  Merritt replied that day, stating that she had not received any voicemails from Thompson.  *Id.*  The next day, December 27, 2007, Thompson again e-mailed Merritt requesting clarification on COBRA benefits.  *Id.*  Merritt replied, approximately three and a half hours later, stating that she had just called Thompson at both of the phone numbers Thompson had provided, and that she had not received any messages from Thompson, but that MHHC's COBRA administrator would soon send written materials to Thompson.  *Id.*  On March 18, 2008, March 24, 2008, and March 25, 2008, Thompson sent additional e-mails to Merritt and employees of AmeriFlex, LLC (MHHC's COBRA administrator), inquiring about the status of her COBRA documents.  *See* Dkt. 53-3 at ECF pp. 64–69.[2]  On March 25, 2008, Ameriflex, LLC sent Thompson COBRA enrollment forms.  56.1 ¶ 5, Silverberg Decl. Ex. J.  Thompson was eligible to receive COBRA benefits retroactive to the date her insurance coverage ended (*i.e.*, such that she would have suffered no gap in coverage).  However, she did not elect to enroll in COBRA, choosing instead to apply for Social Security Disability benefits.  56.1 ¶¶ 6–8.

    B.    **Pension Plan**

As for the Pension Plan, Thompson contacted Merritt regarding the Pension Plan on December 27, 2007—before the January 2008 filing of the NYSDHR/EEOC complaint.  Silverberg Decl., Ex. I.  On December 31, 2007, Thompson followed up with Merritt, requesting contact information for the benefit plan administrator.  *Id.* at Ex. M.  Less than an hour later, Merritt replied, providing Thompson with the contact information of the Long Island Benefits Group (LIBC), MHHC's Pension Plan administrator, and a non-party here.  *Id.*  On February 7,

---

[2] Because Thompson's omnibus opposition to MHHC's motion (Dkt. 53) is voluminous, the Court's ECF system separated that document into four parts.  They are referred to herein by subpart, *e.g.*, Dkt. 53-3.  Additionally, because certain portions of the submission are not consecutively paginated, the Court refers to the page numbers assigned by the ECF system.

2008, Thompson e-mailed Merritt and employees of LIBC, requesting an update on her request for Plan account information. Dkt. 53-2 at ECF p. 3. On May 6, 2008, Thompson e-mailed an MHHC employee, stating that she had been told certain information regarding her Plan account could not be provided until June 2008, the end of the fiscal year, but seeking another update on her request nonetheless. *Id.* at ECF p. 6. Through August 2008, Thompson continued to discuss the progress of her Plan information request with employees of LIBC. *Id.* at ECF pp. 8–9.

It was not until more than a year later, in 2009, that Thompson received a statement of her Plan account and attendant disbursement. 56.1 ¶ 14. However, as Thompson had been informed by employees of both MHHC and Long Island Benefits Group, *see* Dkt. 53-2 at ECF pp. 6–9, the pension benefit plan operates on a July 1 through June 30 fiscal year. 56.1 ¶ 10. Plan statements and beneficiary payments can be issued only after a fiscal year has closed and that year's results are audited, a process which can take six months to a year. As a result, in the ordinary course, Plan statements and disbursements are not distributed until 12 to 18 months after the close of the fiscal year in question. *Id.* ¶¶ 12–13.

      C.      **Thompson's Belongings**

On January 3, 2008, Thompson e-mailed three employees of MHHC asking how she could retrieve her belongings from MHHC's offices. Silverberg Decl. Ex. M. On January 18, 2008, MHHC employee Lauren Machin ("Machin") replied to Thompson, asking if Thompson would consent to having her belongings packed in a box and picked up by a designee, because Thompson could not climb stairs and there was no elevator to the floor her belongings were on. *Id.* During the ensuing months, Machin and Thompson exchanged several phone calls and e-mails, sometimes copying other MHHC employees, attempting to coordinate the return of Thompson's belongings. 56.1 ¶ 18; Silverberg Decl. Ex. M; Dkt. 53-1 at ECF pp. 40–53.

Eventually, unable to successfully coordinate with Thompson, MHHC employee Verona Greenland ("Greenland") packed Thompson's belongings into a box and sent the box to Thompson's home. Silverberg Supp. Decl., Ex. 1. However, Thompson refused to accept the package, and she did not open the box MHHC had sent her. 56.1 ¶¶ 19–20.

It is undisputed that Machin, Thompson's primary contact at MHHC for the return of Thompson's belongings, had never seen Thompson's NYSDHR/EEOC complaint, nor was she aware of that complaint, until she was deposed in this matter, on August 25, 2011. *Id.* ¶ 16; Dkt. 53-3 at ECF pp. 39–45, 48–51.

### D.     MHHC's Summary Judgment Motion

On September 15, 2011, discovery in this case closed. On December 28, 2011, MHHC moved for summary judgment. In support of its motion, MHHC argues that (1) Thompson did not engage in any protected activity before either the delay in receipt of her COBRA forms or the delay in receipt of her Pension Plan statement; (2) neither the delay in Thompson's receipt of COBRA forms nor the delay in providing Thompson with her Pension Plan statement constitutes an adverse action under Title VII; (3) Thompson cannot establish a causal link between any claimed adverse action and any protected activity; and (4) even if Thompson could make out a prima facie case of retaliation, MHHC has articulated neutral justifications for its actions, which Thompson has failed to show are mere pretext for retaliation.

On February 10, 2012, Thompson submitted opposition papers. She makes several arguments relating to her underlying termination from MHHC. Those claims, however, were dismissed by Judge Jones as untimely. Thompson also argues that the undisputed delays with respect to furnishing her the various materials she requested necessarily bespeak retaliatory animus. On February 24, 2012, MHHC submitted a reply.

## II.   Discussion

### A.   Summary Judgment Standard

Summary judgment may be granted only where the submissions, taken together, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the non-movant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

Once the moving party has adduced facts demonstrating that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In cases based on allegations of discriminatory retaliation, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted).  However, "the salutary purposes of summary judgment—avoiding protracted,

expensive and harassing trials—apply no less to discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Thus, even in such cases, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137.

In considering MHHC's motion, the Court is, further, mindful that Thompson is a *pro se* litigant whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted). However, this forgiving standard "does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

### B. Retaliation Under Title VII

Under Title VII, it is unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . in an investigation" of conduct prohibited by Title VII**.** 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show:

> (1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010); *Nolley v. Swiss Reinsurance Am. Corp.,* No. 10-cv-7626, 2012 U.S. Dist. LEXIS 30955, at *44 (S.D.N.Y. Mar. 8, 2012). Once a plaintiff has made out a prima facie case of retaliation, the Court considers, second, whether the defendant can articulate a "legitimate, non-retaliatory" reason for the allegedly-retaliatory action; and, third, whether, notwithstanding the defendant's explanation, the plaintiff

has nevertheless produced evidence that the neutral justification is pretextual, *i.e.* that retaliation was, in fact, "a substantial reason" for the adverse action. *Nolley*, 2012 U.S. Dist. LEXIS 30955, at *45 (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 & 723 (2d Cir. 2010)). Here, MHHC argues that Thompson has failed to make out a prima facie case of retaliation as to all of her claims, and that, even if the Court were to find a prima facie case of retaliation, MHHC has advanced neutral justifications for its actions, which have not been shown to be pretextual. The Court addresses Thompson's three retaliation claims in turn.

### 1. COBRA Benefits

Thompson did not receive a COBRA election form until March 25, 2008, approximately four months after her termination and after she first sought to contact MHHC regarding COBRA benefits. However, it is undisputed that Thompson (1) was, eventually, given the opportunity to enroll in COBRA retroactive to the date her MHHC insurance ended, (2) turned down that option in favor of Social Security Disability benefits, while (3) not seeking future employment. For the reasons that follow, in light of these facts, Thompson cannot establish that MHHC took adverse action against her, let alone adverse action in retaliation for a protected activity. As a result, she cannot make out a prima facie claim of retaliation.

The Second Circuit has recognized "that there are no bright-line rules" defining the boundaries of adverse action in the context of post-employment retaliation; as a result, "courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). However, the Circuit has limited the scope of Title VII's protections to proscribe only those "actions injurious to *current* employment or the ability to *secure future* employment." *Stathatos v. Gala Res.*, LLC, No. 06-cv-13138, 2010 U.S. Dist. LEXIS 50511, at *35 (S.D.N.Y. May 21,

2010) (quoting *Wanamaker*, 108 F.3d at 466 (emphasis in original)); *see also Giarrizzo v. Holder*, No. 07-cv-801, 2011 U.S. Dist. LEXIS 120739, at *15 (N.D.N.Y. Oct. 19, 2011); *Moultrie v. Potter*, No. 04-cv-6887, 2007 U.S. Dist. LEXIS 52903, at *19–20 (S.D.N.Y. July 24, 2007).

In the post-employment context, impermissible adverse action may be found where, for example, an employer provides an untruthful letter of reference for a former employee who complained of discriminatory conduct, "blacklists" or otherwise speaks ill of a former employee with retaliatory motive, or restricts an ex-employee's access to former co-workers in such a way as to hamstring future job prospects. *See, e.g.*, *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds by Mohasco Corp. v. Silver*, 447 U.S. 807 (1980) (post-employment blacklisting falls within the scope of retaliatory provisions of Title VII); *Pantchenko v. C. B. Dolge Co.*, 581 F.2d 1052, 1054–55 (2d Cir. 1978) (refusal to provide an employee with an employment reference, in retaliation for filing a claim against the employer, constituted an adverse action); *Ghadersohi v. Roswell Park Cancer Inst.*, No. 10-cv-143, 2011 U.S. Dist. LEXIS 112616, at *9–11 (N.D.N.Y. Sept. 30, 2011) (assuming *arguendo* that adverse action had been shown where former employer prohibited plaintiff from communicating with employee co-authors of a paper, the publishing of which would have advanced plaintiff ex-employee's career); *Kreinik v. Showbran Photo, Inc.*, No. 02-cv-1172, 2003 U.S. Dist. LEXIS 18276, at *20–23 (S.D.N.Y. Oct. 14, 2003) (declining to dismiss claim that defendant retaliated by filing frivolous counterclaims alleging fraud and business malfeasance because such claims could impact plaintiff's future job prospects); *E.E.O.C. v. Die Fliedermaus, L.L.C.*, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) (finding that distribution of derogatory flyers in response to the filing of a charge with the E.E.O.C. constitutes retaliation under Title VII where flyers affected plaintiffs'

ability to find jobs); *Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234, 240 (S.D.N.Y. 1995) ("Poor recommendations, refusals to furnish recommendations, or threats to future employers may be discriminatory practices if done in direct retaliation . . . .").

By contrast, where a plaintiff has not established that the allegedly-retaliatory action hurt his or her job prospects, those actions have not been held retaliatory and claims premised on such acts have been dismissed. *See, e.g.*, *Giarrizzo*, 2011 U.S. Dist. LEXIS 120739, at *15–17 (dismissing retaliation claim because plaintiff had not detailed injury to job prospects from alleged retaliation); *Gaidasz v. Genesee Valley Bd. of Coop. Educ. Sys.*, 791 F. Supp. 2d 332, 336–37 (N.D.N.Y. 2011) (granting defendant's summary judgment motion and finding no adverse action where plaintiff had failed to demonstrate damage to future job prospects); *Moultrie*, 2007 U.S. Dist. LEXIS 52903, at *20 (finding no adverse action where plaintiff's "difficulties in dealing with the bureaucracy of obtaining benefits relating to his disability compensation" did not "adversely affect either his current or future employment status"); *Frontline Communs. Int'l, Inc. v. Sprint Commc'ns. Co., L.P.*, 374 F. Supp. 2d 368, 370–71 (S.D.N.Y. 2005) (granting summary judgment for failure to show adverse action, where plaintiff failed to show that counterclaims of fraud and business torts against him affected his job prospects). Particularly relevant in this case, a court in this District has held that a plaintiff fails to show adverse action where post-employment health care benefits are delayed, or even revoked outright, after a plaintiff engages in protected activity. *See Stathatos*, 2010 U.S. Dist. LEXIS 50511, at *35 (granting summary judgment to defendant where defendant rescinded promise to pay for post-employment health insurance in response to filing of discrimination lawsuit.).[3]

---

[3] In fact, it is not clear that the conduct Thompson complains of would constitute an adverse action even if Thompson were still employed by MHHC, as a "delay in benefits that is only a 'mere inconvenience' does not rise to the level of adverse employment action for purposes of a

Here, the most Thompson can allege is that her COBRA forms were unduly delayed. Thompson has not shown any prejudice from this delay of the sort cognizable under Title VII. Thompson has not alleged, let alone presented evidence, that the delay in furnishing her COBRA election form affected her ability to search for or procure new employment. It is, further, undisputed that Thompson was given the opportunity to enroll in COBRA retroactive to the date her MHHC insurance lapsed. The only prejudice that Thompson asserts is that, during the period of delay, she forewent medical treatment and physical therapy appointments, and elected not to fill prescriptions.[4]  *See, e.g.*, Dkt. 53 at 34–35.

Further, the record evidence affirmatively belies any claim that Thompson was in the market for future employment at all after leaving MHHC. It is undisputed that Thompson elected not to pursue COBRA, but rather Social Security Disability benefits. Such benefits cannot be received if a claimant is working or able to work. *Cf. Moultrie*, 2007 U.S. Dist. LEXIS 52903, at *20 (plaintiff did not show adverse effect on future job prospects where plaintiff was on disability and, *ipso facto*, could not work). Thompson has thus failed to show that the delay in receiving her COBRA election forms rose to the level of an adverse action under Title VII.

---

retaliation claim." *Birkholz v. City of New York*, No. 10-cv-4719, 2012 U.S. Dist. LEXIS 22445, at *25 (S.D.N.Y. Feb. 22, 2012) (quoting *Barriera v. Bankers Trust*, No. 98-cv-3641, 2003 U.S. Dist. LEXIS 18601 (S.D.N.Y. Oct. 20, 2003)) (additional citation omitted).

[4] Thompson has not alleged or established that, had she received such medical treatment and prescriptions, she would have been better positioned to pursue or procure another job. The Court notes that, although these injuries are not redressable under Title VII, a plaintiff injured by an untimely-delivered COBRA form may recover statutory damages from the plan administrator— in this case, Ameriflex, not named as a defendant herein. *See* 29 U.S.C. § 1132(c)(1); *Messer v. Bd. of Educ.*, No. 01-cv-6129, 2007 U.S. Dist. LEXIS 3055, at *70 (E.D.N.Y. Jan. 16, 2007).

However, even if Thompson had made such a showing, her claim would still fail for a separate reason: Thompson has not shown that her filing of the NYSDHR/EEOC complaint caused MHHC to delay furnishing COBRA forms to her. Thompson argues that the temporal proximity of these events supports an inference of retaliatory intent. But on the summary judgment record, no such inference is warranted. Thompson's NYSDHR/EEOC complaint was filed on January 7, 2008. 56.1 ¶¶ 3–4. Importantly, however, MHHC's employees unresponsiveness to Thompson's COBRA inquiries began earlier, on December 27, 2007, as revealed by Thompson's e-mail interactions with Merritt, began earlier, on December 27, 2007. Silverberg Decl., Ex. M. Further, Thompson herself testified at her deposition that Merritt's non-responsiveness to her inquiries had begun months earlier, as early as May 2007. Silverberg Decl., Ex. H at 89:14–19.

Where, as here, the proximity between a protected activity and allegedly-retaliatory conduct "'is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'" *Hartley v. Rubio*, 785 F. Supp. 2d 165, 182 (S.D.N.Y. 2011) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (where adverse employment action due to deficient performance commenced five months before plaintiff's filing of an EEOC complaint, there could be no causal connection between plaintiff's complaint and his firing)). Here, it is undisputed that the non-responsiveness of which Thompson complains predated the complaint she filed with the NYSDHR and the EEOC. Thus, no retaliatory inference can fairly be drawn from the bare fact that such non-responsiveness persisted after she filed that complaint.

In sum, on the record at summary judgment, no "fair-minded jury" could conclude that either the delay of COBRA benefits hindered Thompson's ability to secure future employment,

or that a causal link exists between the filing of Thompson's NYSDHR/EEOC complaint and the delay in her COBRA forms, without engaging in "unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (citing *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).  Thompson has failed to show either that the delay in her receipt of COBRA election forms was an adverse action, or that any such action was retaliation for the complaint she filed.  Summary judgment on this claim is, therefore, granted in favor of MHHC.

### 2. Pension Plan

Thompson also claims that, in retaliation for the complaint she filed with the NYSDHR and the EEOC, MHHC withheld her Pension Plan statement and disbursement.  Like Thompson's COBRA claim, this claim fails because Thompson has neither alleged nor established any facts tending to show that the withholding of Pension Plan information was "injurious . . . to [her] ability to *secure future* employment." *Wanamaker*, 108 F.3d at 466; *Giarrizzo*, 2011 U.S. Dist. LEXIS 120739, at *15; *Stathatos*, 2010 U.S. Dist. LEXIS 50511, at *35; *Moultrie*, 2007 U.S. Dist. LEXIS 52903, at *19–20.  Thompson has thus failed to establish a prima facie claim of retaliation based on the Pension Plan.

In any event, even if Thompson had made out such a prima facie claim, MHHC has put forth a neutral justification for the delay in providing Thompson with a Pension Plan statement and disbursement.  *See Nolley*, 2012 U. S. Dist. LEXIS 30955, at *45.  MHHC's proffered justification is that Pension Plan statements can only be distributed after a fiscal year has closed, and after accountants have audited the Plan's financial results for that year.  56.1 ¶¶ 10, 12–13.  In this case, Thompson was terminated in December 2007, and the fiscal year in which the termination occurred did not close until June 30, 2008.  *Id.* ¶¶ 1, 10, 12–13.  At that point, it took six months to a year for accountants to audit the Plan's fiscal year results, and for Plan

[14]

statements and disbursements to be distributed. *Id.* ¶¶ 10, 12–13. Thompson received her Plan statement and disbursement sometime in 2009. *Id.* ¶ 14. This timeline comports with MHHC's account of the timetable by which Plan members generally receive Pension Plan statements.

Thompson asserts, *ipse dixit*, that MHHC's failure to provide her with a Pension Plan statement earlier reflected retaliatory animus, but she has not presented any evidence that the delay—which the well-documented evidence uniformly shows was generally applicable, due to accounting procedures, and not specific to Thompson—was a mere pretext for retaliation. "[A] plaintiff seeking to demonstrate pretext [must] produce something more 'than conclusory allegations.'" *Barkley v. Penn Yan Cent. Sch. Dist.*, 442 F. App'x 581, 585 (2d Cir. 2011) (summ. order) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)). Accordingly, Thompson's "conclusory statements . . . [are] not sufficient to defeat a summary judgment motion." *Porter v. Goord*, No. 10-1093-pr, 2012 U.S. App. LEXIS 5418, at *2 (2d Cir. Mar. 15, 2012) (slip op.) (summ. order) (quoting *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002)). MHHC's motion for summary judgment on this claim is, therefore, granted as well.[5]

### 3. Thompson's Belongings

Finally, Thompson claims that MHHC employee Machin failed to coordinate the return of her "professional tools and belongings," and that MHHC employee Greenland decided to mail those belongings to Thompson instead of letting her retrieve them in person, all, allegedly, in

---

[5] As with COBRA benefits, a plaintiff aggrieved by the failure to timely distribute pension plan information has a cause of action for statutory damages under the Employee Retirement Income Security Act of 1974. *See* 29 U.S.C. § 1132(c)(1); *McFadden v. Clarkeson Research, Inc.*, No. 08-cv-5187, 2011 U.S. Dist. LEXIS 47336, at *9–10 (E.D.N.Y. May 2, 2011). Thompson appears to be aware of this provision, as she is presently suing both MHHC's COBRA administrator, Ameriflex, and its Pension Plan administrator, Long Island Benefits Group, in a separate action in this District. *See* No. 11-cv-5635 (S.D.N.Y.).

retaliation for her filing of the NYSDHR/EEOC complaint.  Silverberg Decl., Ex. F.  Summary judgment in favor of MHHC is merited on this claim as well.  Thompson has failed to make out a prima facie case of retaliation as to the delay in returning her belongings because she has not demonstrated either adverse action on the part of MHHC or a causal connection between the filing of the NYSDHR/EEOC complaint, on the one hand, and Machin's alleged inattention to Thompson's requests and/or Greenland's decision to mail Thompson her belongings, on the other.  These deficiencies are addressed in turn.

First, Thompson has neither alleged nor shown adverse action on the part of MHHC, *i.e.*, that the conduct complained of—imposition of a delay in the receipt of her "professional tools and belongings"—impacted Thompson's ability to "secure future employment."  *Wanamaker*, 108 F.3d at 466.  Indeed, although Thompson characterizes some of the items in question as "professional tools," her submissions describe only their monetary value, not any utility they may have had had she been pursuing other employment.  *See, e.g.*, Dkt. 53 at ECF p. 43 ("Items that were purchased during Pro Se Plaintiff's career and/or occupation as a Master of Social Work were physically located in her office . . . such items valued approximately $3000-$5000 dollars.").  And, as noted, the record reveals that Thompson was not in the job market at all after her employment at MHHC.  Thus, by definition, any delay in the receipt of her belongings could not harm Thompson's search for employment when she was not, in fact, pursuing employment.  *Cf. Moultrie*, 2007 U.S. Dist. LEXIS 52903, at *20.

Second, assuming *arguendo* that Thompson had demonstrated an adverse action, she has failed to show a causal connection between the filing of the NYSDHR/EEOC complaint and that action.  "A causal connection may be shown directly, through evidence of retaliatory animus directed against the plaintiff by the defendant, or indirectly, by showing that the protected

activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Glaves-Morgan v. City of New York*, No. 11-cv-1248, 2012 U.S. Dist. LEXIS 38539, at *33–34 (S.D.N.Y. Mar. 21, 2012) (citing *Lessambo v. PricewaterhouseCoopers, L.P.*, No. 08-cv-6272, 2010 U.S. Dist. LEXIS 107827, at *34–35 (S.D.N.Y. Sept. 27, 2010)) (internal quotation marks omitted), *aff'd*, 451 F. App'x 57 (2d Cir. 2011). That causal inference, however, may be negated where uncontroverted facts make clear that it is not appropriately drawn in the circumstances at hand. *Cf. Nolley*, 2012 U.S. Dist. LEXIS 30955, at *47 (noting that intervening acts between protected activity and adverse action may negate inference generated by temporal proximity, and collecting cases); *Lytle v. JPMorgan Chase*, No. 08-cv-9503, 2012 U.S. Dist. LEXIS 15599, at *107–09 (S.D.N.Y. Feb. 8, 2012) (Report & Recommendation) (plaintiff's unwillingness to comply with employment requirement defeats causal inference generated by temporal proximity between protected conduct and adverse action); *Hartley*, 785 F. Supp. 2d at 182 (quoting *Slattery*, 248 F.3d at 95) (inference of causation created by temporal proximity is negated when uncontroverted facts demonstrate that adverse actions began before protected activity occurred); *Joseph v. Marco Polo Network, Inc.*, No. 09-cv-1597, 2010 U.S. Dist. LEXIS 119713, at *49–56 (S.D.N.Y. Nov. 10, 2010) (granting summary judgment to defendant where plaintiff's breach of company procedures, as well as protected conduct, predated adverse action).

     Here, Thompson infers causation solely based on the temporal proximity of the filing of the NYSDHR/EEOC complaint January 7, 2008 and the MHHC employees' alleged lapses with regard the retrieval of her belongings, beginning in late January 2008 and extending into May 2008. But that inference, as to Machin, is fatally undercut by the utter absence of any evidence that Machin was aware, at any relevant time, that Thompson had filed a complaint. Rather, at

her deposition, Machin testified that she in fact had not been aware until 2011 (some three years after her alleged acts of retaliation) that Thompson had filed the NYSDHR/EEOC complaint. *See* Silverberg Decl., Ex. L; Dkt. 53-3 at ECF pp. 39–45, 48–51.  There is no evidence to the contrary, direct or circumstantial.  On this record, no reasonable jury could infer that Machin's alleged failure to cooperate in returning Thompson's belonging resulted from a desire to retaliate against her for filing a complaint.

As for Greenland's alleged decision to pack Thompson's belongings in a box and ship them, this occurred on or about May 6, 2008.  *See* Silverberg Supp. Decl., Ex. 1.  Thompson had filed the NYSDHR/EEOC complaint in January 2008, approximately four months earlier.  56.1 ¶¶ 3–4.  "[C]ourts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."  *Flood v. UBS Global Asset Mgmt.*, No. 10-cv-374, 2012 U.S. Dist. LEXIS 12113, at *52 (S.D.N.Y. Feb. 1, 2012) (citing *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011)); *see also Williams v. Woodhull Med. & Mental Health Ctr.*, No. 10-cv-1429, 2012 U.S. Dist. LEXIS 21645, at *7 (E.D.N.Y. Jan. 31, 2012); *Mazurkiewicz v. New York City Health & Hosps. Corp.*, No. 09-cv-5962, 2010 U.S. Dist. LEXIS 107697, at *13 (S.D.N.Y. Sept. 16, 2010).  Thompson offers no other basis on which to infer retaliatory intent. Thus, Thompson has failed to make out a prima facie case of retaliation as to the actions of either MHHC employee.  MHHC's motion for summary judgment on this claim is, therefore, granted as well.

[19]

## CONCLUSION

For the foregoing reasons, MHHC's motion for summary judgment is granted. The Clerk of Court is directed to terminate all pending motions and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: April 6, 2012
New York, New York